IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ) | |
| INFORMATION ASSOCIATED WITH ) | |
| FACEBOOK USER ID ) | Case No. 5:21-mj-00016 |
| **Britney.barr1** ) | |
| **1485750254** ) | |
| THAT IS STORED AT PREMISES ) | |
| CONTROLLED BY FACEBOOK INC. ) | |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, William Seth Foster, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2. I am a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), and have been since December 19, 2018. Prior to joining DEA as a TFO, I was assigned to the Criminal Investigations Division of the Frederick County, VA Sheriff's Office from May 2018 until December 2018. From April 2013 until May 2018, I was assigned to the Northwest Virginia Regional Drug Task Force. Prior to my Narcotics experience, I was assigned to the Patrol

Division with the Frederick County Sheriff's Office from December 2007 until April 2013.  Prior to Frederick County Sheriff's Office, I was employed by Front Royal Police Department in Front Royal, VA from June 2006 until December 2007 and was assigned to the Patrol Division.  I am currently assigned as a TFO to the Winchester Resident Office of the Washington Field Division Office, located in Washington D.C.  Over the course of my career, I have investigated hundreds of narcotics trafficking cases and have participated in the execution of subpoenas, search warrants, and arrest warrants.  I have also received training on investigating narcotics trafficking cases, both under federal and state laws.

3.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.    Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section 841(a)(1) have been committed by Britney Hope BARR.  There is also probable cause to search the information described in Attachment A for evidence of these crimes (and contraband or fruits of these crimes) as described in Attachment B.

**PROBABLE CAUSE**

5.    On September 17, 2020, Britney BARR called 911 from her cell phone and stated that her name was Christina Wilson.  BARR advised that there was an overdose in the area of 116 N. Indian Alley, Winchester, VA.  BARR then advised that a male stopped her and asked to use her phone and afterwards ran away.  BARR stated that she believed the male lived at 116 N. Indian

Alley, but did not provide an apartment number. Officers checked the area but did not locate anything. Officers also knocked on an apartment door, but no one answered.

6. On September 20, 2020, officers from the Winchester Police Department responded to 116 N. Indian Alley, Apt. 102, Winchester, Virginia for a welfare check. Upon arrival, officers had to force entry into the apartment, and, upon doing so, located Wilson Warner CROPP III deceased. Officers also observed a syringe and spoon on a table next to CROPP. An autopsy was conducted on CROPP's body by the Medical Examiner's Office. The cause of death was determined to be mixed drug (Fentanyl, Etizolam, Diphenhydramine and Sertraline) intoxication.

7. An investigator was able to determine that the phone number used to call 911 actually belonged to BARR. When interviewed by law enforcement, BARR admitted to lying about her name, because she had an outstanding arrest warrant. BARR admitted to being in CROPP's apartment and hearing CROPP having trouble breathing. BARR initially denied providing any heroin to CROPP.

8. The investigator obtained and executed a state search warrant on CROPP's Facebook account, which contained Facebook messages between CROPP and BARR discussing a drug transaction the evening prior to CROPP's death.

9. Based on this conversation, investigators re-interviewed BARR, who stated, among various statements, that (1) she purchased heroin from Jordan DERRY, who is supplied by Charles BUFORD; (2) she then used BUFORD's car to drive to CROPP's apartment; (3) she sold the heroin to CROPP, who paid her by CashApp; (4) she did not know how much heroin CROPP used; (5) she overdosed and when she woke up CROPP was on the floor. BARR admitted that she tried to pour water on CROPP as well as perform CPR, but CROPP was not breathing when she performed CPR.

10. Based on the contents of CROPP's Facebook account, it is apparent that BARR communicates with others using Facebook Messenger, including communicating about drug transactions. Among other evidence, the contents of BARR's Facebook account could lead to additional evidence corroborating or disproving her statements about her drug trafficking activity, the sources of her supply, and when and where she obtains illegal narcotics.

## BACKGROUND ON FACEBOOK

11. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

12. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

13. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook then assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for the purpose of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

14. Facebook users can select different levels of privacy for the communication and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

15. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other upcoming "events," such as social occasions, by listing the event's time, locations, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A Facebook user's profile page also includes a "wall" which is a space where the user and his or her "friends' can post messages, attachments, and links that will typically be visible to anyone who can view their profile.

16. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

17. Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

18. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

19. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (i.e., non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

20. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

21. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

22. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

23. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

24. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

25. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

26. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a

Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

27. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning

subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

28.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate the items described in Section II of Attachment B.

### CONCLUSION

29.     Based on the foregoing, I request that the Court issue the proposed search warrant.

30.     Pursuant to 18 U.S.C. § 2703(g), the presence of law enforcement is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Facebook. Because the warrant will be served on Facebook, who will the compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

### REQUEST FOR SEALING

31.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. The release of such information could result in the tampering of witnesses, destruction of evidence, and flight of confederates. Accordingly, there is good cause to

seal these documents because their premature disclosure may seriously jeopardize that investigation.

### OATH

The information in this affidavit is true to the best of my knowledge and belief.

Respectfully submitted,

s/William S. Foster

Task Force Officer, DEA

Received by reliable electronic means and sworn and attested to by telephone on this 19th day of March 2021.

JOEL C. HOPPE
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to be searched

This warrant applies to information associated with the Facebook user ID **1485750254** with vanity name **Britney.barr1** that is stored a premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

## Particular things to be seized

**I.        Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)     All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the account and all other documents showing the user's posts and other Facebook activities from March 1, 2020 through October 4, 2020.

(c)     All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from March 1, 2020 through October 4, 2020 including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification

numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f) All other records and contents of communications and messages made or received by the user from March 1, 2020 through October 4, 2020 including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g) All "check ins" and other location information;

(h) All IP logs, including all records of the IP addresses that logged into the account;

(i) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j) All information about the Facebook pages that the account is or was a "fan" of;

(k) All past and present lists of friends created by the account;

(l) All records of Facebook searches performed by the account from March 1, 2020 through October 4, 2020;

(m) All information about the user's access and use of Facebook Marketplace;

(n) The types of service utilized by the user;

(o) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within **14 DAYS** of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of Title 21, United States Code, Section 841(a)(1) involving Britney BARR, Jordan DERRY, Charles BUFORD, and Wilson CROPP from March 1, 2020 to October 4, 2020, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) The sale of illegal drugs;

(b) Any evidence related to the overdose death of Wilson Warner CROPP III;

(c) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and

    events relating to the crime under investigation and to the Facebook account owner;

(d) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(e) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).